508 A.2d 380

Robert A. Walton, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Submitted on briefs November 20, 1985, to Judges MACPHAIL, DOYLE and BARRY, sitting as a panel of three.

*K. Lawrence Kemp, Kemp and Kemp,* for petitioner.

*Charles Donahue,* Associate Counsel, with him, *Charles G. Hasson,* Acting Deputy Chief Counsel, for respondent.

OPINION BY JUDGE DOYLE, April 23, 1986:

This is the appeal of Robert A. Walton (Claimant) from an order of the Unemployment Compensation

Board of Review (Board), which affirmed the decision of the referee denying Claimant benefits under Section 402(e) of the Unemployment Compensation Law,[1] 43 P.S. §802(e) (willful misconduct).

Claimant was last employed by Browning-Ferris Industries (Employer) as an operator of a commercial trash truck. Between the period of April, 1983 and November, 1983, Claimant was involved in eight different accidents which resulted in damage to the Employer's truck.[2] During November of 1983, Claimant received a warning letter from his Employer concerning his accidents, and was required to undergo retraining on the safe operation of his truck.

On December 15, 1983, Claimant drove his truck under a bridge with the truck's top lid in a partially opened position. Claimant noticed that the lid was open by use of the cab's periscope but could not stop the truck in time to avoid collision with the bridge. Claimant was immediately suspended without pay pending an investigation of this accident. On December 28, 1983, Claimant was terminated from his position on the basis of his involvement in an excessive number of accidents pursuant to an Employer policy.

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897 *as amended*.

[2] On April 28, 1983, Claimant misjudged the clearance of his truck and struck the overhang of a building. On May 3, 1983, Claimant tore the door off of the truck while operating the truck's lift mechanism. On May 20, 1983, he scraped a pole while maneuvering the truck. On June 3, 1983, Claimant again misjudged clearance and struck an overhead sign. On June 28, 1983, he once again misjudged clearance and struck overhead utility wires with the truck. On September 22, 1983, Claimant struck a parked car while maneuvering the truck to unload some trash. On October 28, 1983, Claimant struck a light pole, and on October 31, 1983, he once again hit overhead utility wires.

Claimant's application for unemployment compensation benefits was denied by the Office of Employment Security. On appeal to the referee, the referee found that Claimant's termination was due to his willful misconduct, and denied compensation on that basis. The referee's determination was upheld by the Board, and this appeal followed.

In determining whether a claimant's vehicular accidents constitute a basis for disqualifying willful misconduct this Court has stated that "a series of accidents, attributable to negligence, occurring periodically and with consistent regularity, which produce substantial financial loss to the employer ... will support the conclusion that an employe is guilty of willful misconduct." *Coulter v. Unemployment Compensation Board of Review*, 16 Pa. Commonwealth Ct. 462, 466, 332 A.2d 876, 879 (1975). We also observed in *Coulter* that "[a] single dereliction or a minor and casual act of negligence or carelessness does not constitute willful misconduct." *Id*. And, in *Schappe v. Unemployment Compensation Board of Review*, 38 Pa. Commonwealth Ct. 249, 392 A.2d 353 (1978), we noted:

> While the number of accidents cannot be said to be unimportant in a determination of whether such accidents constitute willful misconduct, we do not believe that the number is the sole and exclusive criterion. Rather, the controlling issue is whether the nature of the Claimant's negligence is such as to demonstrate 'manifest culpability, wrongful intent, evil design or intentional and substantial disregard for the employer's interests *or the employee's duties and obligations.*' Kentucky Fried Chicken of Altoona, Inc. v. Unemployment Compensation Board of Review, *supra*. (Emphasis added.) Obviously, each case will have to be decided on its own facts,

irrespective of the number of accidents involved.

38 Pa. Commonwealth Ct. at 253, 392 A.2d at 355-56.

Thus, under the criteria enunciated at *Coulter* and *Schappe,* it is necessary to examine each case on its facts in order to ascertain on which side of the line it falls. In *Coulter,* where there was but a single accident in which the claimant damaged his employer's truck by failing to negotiate a turn on a bridge which was considered "dangerous for drivers," we held that Coulter was not disqualified from receiving benefits under Section 402(e). But in *Seyler v. Unemployment Compensation Board of Review,* 85 Pa. Commonwealth Ct. 392, 481 A.2d 1262 (1984), where claimant's actions resulted in two negligent accidents in six months, we held that disqualifying willful misconduct had been shown because the record demonstrated a lack of care for the employer's equipment. Similarly, in *Schappe,* where the claimant was involved in two negligent accidents within 30 days, the claimant was denied benefits because of a lack of care for his employer's equipment. Applying the instant facts (9 accidents in less that one year) to the relevant law, we must conclude that Claimant's ongoing pattern of accidents demonstrates a lack of care for Employer's equipment which is far greater than that of the claimants in *Schappe* and *Seyler* and thus, Claimant here is properly deemed disqualified under Section 402(e).

The other criterion articulated in *Coulter,* that requiring substantial financial loss to the employer, is not a sole nor exclusive criterion for determining whether benefits should be disallowed. Assuming arguendo that none of the first nine accidents caused serious financial loss, we believe it is unreasonable to insist on waiting for a tenth accident which *does* cause substantial loss to

find that Claimant manifested a substantial disregard for Employer's interests.[3]

Finally, Claimant argues that none of the accidents in which he was involved showed an *intentional* disregard of his duties and obligations to his Employer. Claimant contends that most of the accidents involved misjudgments of distance, and were the result of his ineptness rather than any carelessness or indifference to his Employer's interests. While it is true that Claimant's accidents were the result of his misjudgments and inability to maneuver his vehicle properly, it is also apparent from the record that the accidents could have been avoided had the Claimant exercised adequate caution in the operation of his truck. Given the recurrent nature of these accidents, all of which resulted in some damage or cost to Employer and all of which demonstrate a lack of concern for Employer's property, we are unable to conclude that the Board erred in finding that this conduct constituted willful misconduct.

Accordingly, we affirm the order of the Board which denied benefits.

## ORDER

Now, April 23, 1986, the Order of the Unemployment Compensation Board of Review, No. B-229296, dated April 16, 1984, is hereby affirmed.

---

[3] We note that Employer's operations manager testified that Employer had a written work rule which delineated Employer's policy of discharge for "serious or excessive accidents." Claimant signed a receipt acknowledging that he had received a copy of this rule. Violation of this specific rule, however, was not given as the basis for the discharge.